# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 28, 2011 Session

## AUTHOR RAY TURNER v. DAVID MILLS, WARDEN

**Appeal from the Criminal Court for Morgan County**
**No. 9422     E. Eugene Eblen, Judge**

---

**No. E2011-00074-CCA-R3-HC - Filed April 25, 2012**

---

The State appeals the Morgan County Criminal Court's order granting habeas corpus relief to the Petitioner, Author Ray Turner, and allowing him to withdraw his guilty pleas. The State argues that the Petitioner is not entitled to withdraw his guilty pleas because the thirty percent release eligibility for his two aggravated rape convictions was not a material element of his plea agreement. Upon review, we affirm the habeas corpus court's judgment allowing the Petitioner to withdraw his guilty pleas if he cannot reach an agreement with the State and remanding the case to the Davidson County Criminal Court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined, and JOSEPH M. TIPTON, P.J., filed a separate concurring opinion.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel, Nashville, Tennessee, for the Appellant, David Mills, Warden.

Robert L. Vogel, Knoxville, Tennessee, for the Petitioner-Appellee, Author Ray Turner.

## OPINION

**Background.** The Petitioner was indicted for one count of especially aggravated kidnapping, one count of aggravated robbery, four counts of aggravated rape, and one count of attempted aggravated rape. On November 15, 1995, in the Davidson County Criminal Court, he pleaded guilty to especially aggravated kidnapping, aggravated robbery, and two counts of aggravated rape, and the remaining charges were dismissed.

At the plea submission hearing, the trial court advised the Petitioner that if he were convicted of the charged offense of especially aggravated kidnapping, he would face a

sentence of fifteen to sixty years' imprisonment; if he were convicted of the charged offense of aggravated robbery, he would face a sentence of eight to thirty years' imprisonment; if he were convicted of the four counts of aggravated rape, he would face a sentence for each count of fifteen to sixty years' imprisonment; and if he were convicted of the charged offense of attempted aggravated rape, he would face a sentence of eight to thirty years' imprisonment. The Petitioner responded that he understood the potential sentences that he would face if he proceeded to trial.

The State then summarized the facts supporting the entry of the Petitioner's guilty plea:

Your Honor, State versus A[u]th[o]r Ray Turner, Case No. 95-C-1691. The State's proof would be that on March 16th [sic], 1995, about 10:00 a.m., Rutherford County police officers called the Sex Abuse Unit of the Metro Police Department to report that [the victim] . . . was in Rutherford County, having been abducted from Davidson County. She told police that she had been at the Hermitage Fitness Center on Lebanon Road here in Davidson County when a male black approached her, forced her at gunpoint into her car, took her to a location near the Hermitage here in Davidson County where he raped her, then placed her in the trunk of the car, took her to another location near the Rivergate area here in Davidson County and raped her a second time. She was able to escape from the trunk of the vehicle in Rutherford County and go to a citizen's home there to report what had happened, who called police and notified them.

The police went to that location, knocked on the door where the car had been parked, spoke to a woman by the name of Tanya Johnston, who answered the door, and said that there was a male black there who was asleep, gave a description of him and he fit the description the victim gave [to] the police. They went inside, found him, placed him under arrest, advised him of his rights, and he gave a statement [in] which he admitted to kidnapping [the victim], placing her in the trunk and raping her at various locations and then taking her to Rutherford County.

[The victim] did give an audiotaped statement wherein she told the police that she had been forced to perform oral sex on the defendant, as well as raped vaginally at both locations. There was physical evidence found at the scene, including fingerprints inside the car. The defendant did have possession of the keys to the car belonging to the victim, which he had stolen during the

-2-

course of the robbery. He had kept her confined in the trunk until she was able to escape.

The trial court asked the Petitioner if he was entering guilt pleas of his own free will, and the Petitioner responded, "In a way." When asked to explain this response, the Petitioner stated, "Well, if I go to trial and get found guilty, I'll get a h[---] of a lot more time, you know, so why not plead guilty?" Then the following conversation took place between the trial court and the Petitioner:

| | |
|---|---|
| The Court: | Well, if you're not guilty, though, you ought to let a [j]ury decide. |
| [The Petitioner]: | Well, I ain't taking that chance. |
| The Court: | Well, are you telling me that you're not guilty? |
| [The Petitioner]: | No. |
| The Court: | If you're not guilty, I'm not going to find you guilty. |
| [The Petitioner]: | I don't want to go to trial, so I'm guilty. |
| The Court: | Well, I take it, General, you have witnesses who would testify that these things happened? |
| [The State]: | Well, not only that – I do have that, but I also have his own taped statement in which he admits to abducting the woman, putting her in the trunk of the car, using a gun, forcing her to perform oral sex, vaginally raping her[,] and attempting anal sex. So I have a pretty strong case against him, not just from the witness standpoint, but from his own statement. |
| [The Petitioner]: | Guilty. |

The trial court then accepted the guilty pleas:

All right. Mr. Turner, in Case 95-C-1691, I find there's a factual basis for a finding of guilt and that your plea is voluntary. I find you guilty in Count I of especially aggravated kidnapping and sentence you to twenty years. I find you guilty in Count II of aggravated robbery and sentence you to ten years. Those two sentences [are] to run concurrent[ly] with each other. Count III, I find you guilty of aggravated rape; and, Count IV, aggravated rape[,] and sentence you to twenty years on each of those, the two twenty[-]year sentences to run concurrent[ly] with each other, but consecutive to the twenty years imposed in Count I and II, for a total effective sentence of [R]ange one – forty years as a [R]ange one offender with thirty percent for all purposes. You – it should be noted the offenses occurred before July 1st [sic], 1995, so the – that you get regular sentence credits and that you'll get jail credit from March 16th [sic], 1995, on these cases. The other counts of the indictment are dismissed.

After entering his guilty pleas to the aforementioned offenses in 1995, the Petitioner filed several unsuccessful petitions for post-conviction and habeas corpus relief. See A[u]th[o]r R. Turner v. State, No. 01C01-9707-CR-00274, 1998 WL 652154 (Tenn. Crim. App., at Nashville, Sept. 23, 1998) (affirming dismissal of the post-conviction petition), perm. app. denied (Tenn. Mar. 22, 1999); Author R. Turner v. State, No. M2002-00541-CCA-R3-PC, 2003 WL 1877035 (Tenn. Crim. App., at Nashville, Apr. 14, 2003) (order affirming summary dismissal of post-conviction petition), perm. app. denied (Tenn. Sept. 2, 2003); Author Ray Turner v. State, No. M2004–02831-CCA-R3-CO, 2005 WL 1707964 (Tenn. Crim. App., at Nashville, July 21, 2005) (affirming denial of motion to reopen post-conviction petition); Author Ray Turner v. Stephen Dotson, Warden, No. W2008-00011-CCA-R3-HC, 2008 WL 4253644 (Tenn. Crim. App., at Jackson, Sept. 16, 2008) (affirming summary dismissal of petition for writ of habeas corpus).

On December 9, 2008, the Petitioner filed the instant pro se petition, his second habeas corpus petition, in the Morgan County Criminal Court. In it, he alleged that his aggravated rape sentences were illegal because he qualified as a "multiple rapist" under Tennessee Code Annotated section 39-13-523 and, therefore, was required to serve those sentences at one hundred percent. The State filed a motion to dismiss, claiming that irregularities in offender classification or release eligibility were not cognizable claims for habeas corpus relief. The Petitioner's response to the motion to dismiss argued that his sentence was illegal because it was in direct contravention of section 39-13-523 and that the thirty percent release eligibility for his aggravated rape sentences was a material bargained-for element of his plea agreement. The habeas corpus court summarily dismissed the petition, and the Petitioner filed a timely notice of appeal.

On appeal, this court concluded that the Petitioner's sentences for aggravated rape were, in fact, void:[1]

> First, we acknowledge that the defendant's sentences for aggravated rape are illegal on the face of the judgments. Our state's multiple rapist statute requires that a defendant who qualifies as a multiple rapist serve 100 percent of his sentence. See T.C.A. § 39-13-523 [footnote ommitted]. The statute defines a multiple rapist as an offender convicted two or more times of rape or aggravated rape. See id. This court has noted that qualifying convictions "render [] [a petitioner] '"a multiple rapist" as a matter of law,' and neither the prosecutor nor the judge c[an] deviate from the release eligibility requirement." Andre Lamont Mayfield v. State, No. M2004-01408-CCA-R3-HC, slip op. at 3 (Tenn. Crim. App., Nashville, July 18, 2005) (quoting Mark A. Percy v. Tenn. Dep't of Corr., No. M2001-01629-COA-R3-CV, slip op. at 2 (Tenn. Ct. App., Nashville, Feb. 26, 2003)). Our supreme court has held that a judgment allotting for sentencing credits contrary to the 100 percent service mandates of Code section 39-13-523 was "void upon its face." Smith v. Lewis, 202 S.W.3d 124, 128 (Tenn. 2006).

Author Ray Turner v. David Mills, Warden, No. E2009-00194-CCA-R3-HC, 2010 WL 1949143, at *3 (Tenn. Crim. App., at Knoxville, May 13, 2010). This court also reiterated the procedural guidelines for illegal sentences in plea agreements:

---

[1]Effective June 11, 2009, the General Assembly amended the statute establishing the grounds for seeking habeas corpus relief to state the following:

> (b) Persons restrained of their liberty pursuant to a guilty plea and negotiated sentence are not entitled to the benefits of this writ on any claim that:
>
> (1) The petitioner received concurrent sentencing where there was a statutory requirement for consecutive sentencing;
>
> (2) The petitioner's sentence included a release eligibility percentage where the petitioner was not entitled to any early release; or
>
> (3) The petitioner's sentence included a lower release eligibility percentage than the petitioner was entitled to under statutory requirements.

T.C.A. § 29-21-101(b) (Supp. 2010); 2009 Tenn. Pub. Acts ch. 420, § 3. This amendment does not apply to this case because the Petitioner filed his petition for writ of habeas corpus prior to June 11, 2009.

"At [the evidentiary] hearing, the issue would be whether the illegal sentence was a material element of a plea agreement with the State, and the proof would be limited to the face of the record of the underlying proceedings. If the record establishes that the illegal sentence was not a bargained-for element of the plea agreement, then, as in Smith, the sentence is void, but the conviction remains intact, and the only remedy is correction of the sentence. If the record establishes that the illegal sentence was a material part of a package deal, then the petitioner is entitled to withdraw his plea if he cannot reach an agreement with the State. See McConnell v. State, 12 S.W.3d 795, 800 (Tenn. 2000) (holding that withdrawal of the guilty plea is unnecessary when the parties agree to replace an illegal sentence with a legal one)."

Id. at *3-4 (quoting Summers v. Fortner, 267 S.W.3d 1, 6-7 (Tenn. Crim. App. 2008) ("Summers II")). Ultimately, this court reversed the judgment of the habeas corpus court and remanded the case to that court for the appointment of counsel and for an evidentiary hearing to determine whether the illegality regarding the thirty percent release eligibility was a material bargained-for element of the Petitioner's plea agreement that would entitle him to withdraw his guilty plea. Id. at *4.

Upon remand, the habeas corpus court appointed counsel, who filed an amended petition for writ of habeas corpus alleging that the Petitioner's sentence was illegal and that the thirty percent release eligibility for his aggravated rape sentences was a material bargained-for element of his plea agreement. At the evidentiary hearing, the trial court heard arguments from the Petitioner's counsel and the State. The trial court also allowed the Petitioner to testify at the hearing, over the State's objection and contrary to this court's directive that the proof at the evidentiary hearing was "'limited to the face of the record of the underlying proceedings.'" Id. at *4 (quoting Summers II, 267 S.W.3d at 6). The Petitioner subsequently testified that he would not have entered a guilty plea in this case if the State had offered two concurrent twenty-year sentences with a release eligibility of one hundred percent for the aggravated rape convictions.

Following the evidentiary hearing, the habeas corpus court entered a December 10, 2010 order granting the Petitioner habeas corpus relief:

After reviewing (1) the petition and its attachments, (2) the respondent's motion to dismiss, (3) the opinion of the Court of Criminal Appeals remanding the case to this Court for the appointment of counsel, (4) the petitioner's amended petition, and (5) the record in this case, and after conducting a hearing on October 25, 2010, in Kingston by agreement of the parties, the Court is of the opinion that the petition for writ of habeas corpus

-6-

is well-taken and should be granted. The Court of Criminal Appeals previously concluded that the petitioner's two judgments of conviction for aggravated rape are void because the petitioner was not ordered to serve his sentences at 100 percent as a multiple rapist, as required by [Tennessee Code Annotated section] 39-13-523. That court remanded the case for this Court to determine "whether the original 30 percent release eligibility was a material bargained-for element of the petitioner's plea agreement." This Court now finds that the petitioner's original 30 percent release eligibility was a material bargained-for element of the petitioner's plea agreement.

Accordingly, it is ordered, adjudicated, and decreed that the petition for writ of habeas corpus is GRANTED, and the case is TRANSFERRED to the Davidson County Criminal Court for further proceedings. Since "the record establishes that the illegal sentence was a material part of a package deal, then the petitioner is entitled to withdraw his plea if he cannot reach an agreement with the State." Summers v. Fortner, 267 S.W.3d 1, 7 (Tenn. Crim. App. 2008) (citing McConnell v. State, 12 S.W.3d 795, 800 (Tenn. 2000)).

## ANALYSIS

On appeal, the State concedes that the Petitioner's aggravated rape sentences were illegal but contends that the Petitioner is not entitled to withdraw his guilty plea because the thirty percent release eligibility for his two aggravated rape convictions was not a material element of his guilty plea agreement. The State argues that the only relief that the Petitioner may receive is a remand to the convicting court for entry of amended judgments ordering one hundred percent service as a "multiple rapist" for the two aggravated rape convictions pursuant to Tennessee Code Annotated section 39-13-523.

In response, the Petitioner argues that he should be allowed to withdraw his plea and proceed to trial if he cannot reach a new plea agreement with the State because the thirty percent release eligibility for his aggravated rape convictions was a material element of his plea agreement. Moreover, he asserts that "[t]he State simply recites the record and then concludes, on its own, and against the opinion of the [habeas corpus] [c]ourt, that the record is insufficient based on [the State's] interpretation of it." Finally, the Petitioner contends that this court's refusal to allow him to withdraw his guilty plea would result in a narrowing of the relief available to defendants who have entered a guilty plea to illegal sentences. He argues that the remedy of allowing a withdrawal of a guilty plea is proper because it avoids "inflict[ing] upon a misled defendant a sentence to which he or she did not agree" and "encourage[s] trial judges and prosecutors to ensure that only legal sentences are bargained[-]for and imposed." Smith, 202 S.W.3d at 129. Upon review, we agree that the Petitioner

-7-

should be allowed to withdraw his guilty pleas and proceed to trial if he cannot reach a new plea agreement with the State.

In determining whether to grant habeas corpus relief, our review is de novo without a presumption of correctness. Summers v. State, 212 S.W.3d 251, 255 (Tenn. 2007) ("Summers I") (citing State v. Livingston, 197 S.W.3d 710, 712 (Tenn. 2006)). A prisoner is guaranteed the right to habeas corpus relief under Article I, section 15 of the Tennessee Constitution. Tenn. Const. art. I, § 15; see also T.C.A. §§ 29-21-101 to -130. The grounds upon which a writ of habeas corpus may be issued, however, are very narrow. Taylor v. State, 995 S.W.2d 78, 83 (Tenn. 1999). "Habeas corpus relief is available in Tennessee only when 'it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered' that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired." Archer v. State, 851 S.W.2d 157, 164 (Tenn. 1993) (quoting State v. Galloway, 45 Tenn. (5 Cold.) 326, 337 (1868)). "[T]he purpose of a habeas corpus petition is to contest void and not merely voidable judgments." Potts v. State, 833 S.W.2d 60, 62 (Tenn. 1992) (citing State ex rel. Newsom v. Henderson, 424 S.W.2d 186, 189 (Tenn. 1968)). "A void judgment is one in which the judgment is facially invalid because the court lacked jurisdiction or authority to render the judgment or because the defendant's sentence has expired." Taylor, 995 S.W.2d at 83 (citing Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998); Archer, 851 S.W.2d at 161-64). However, "a voidable judgment is one that is facially valid and requires proof beyond the face of the record or judgment to establish its invalidity." Summers I, 212 S.W.3d at 256 (citing Dykes, 978 S.W.2d at 529). Moreover, it is the petitioner's burden to demonstrate, by a preponderance of the evidence, that the judgment is void or that the confinement is illegal. Wyatt v. State, 24 S.W.3d 319, 322 (Tenn. 2000).

On remand, this court ordered the habeas corpus court to appoint counsel and to conduct an evidentiary hearing to determine whether the illegality regarding the thirty percent release eligibility was a material bargained-for element of the Petitioner's plea agreement that would entitle the Petitioner to a withdrawal of his guilty plea. Author Ray Turner, 2010 WL 1949143, at *4; see also Summers II, 267 S.W.3d at 8 ("[T]he judgment of the habeas corpus court summarily dismissing the petition for writ of habeas corpus is reversed, and the case is remanded to that court for the appointment of counsel and an evidentiary hearing to determine whether the petitioner is entitled to withdraw his guilty plea."); Summers I, 212 S.W.3d at 259 ("Voluntariness of the plea . . . has no relevance in a habeas corpus proceeding. . . . Instead, the determinative issue is whether the plea agreement included an illegal sentence as a material element."); Smith, 202 S.W.3d at 130 ("[W]here the illegality infects only the sentence, only the sentence is rendered void and habeas corpus relief may be granted to the extent of the sentence only. In such cases, the underlying conviction remains intact."). This court has stated that "materiality exists when 'there is a reasonable

probability' of a change in the outcome of the proceeding." Summers II, 267 S.W.3d at 8 (citing United States v. Bagley, 473 U.S. 667, 682 (1985)). "If the record establishes that the illegal sentence was not a bargained-for element of the plea agreement, then . . . the sentence is void, but the conviction remains intact, and the only remedy is correction of the sentence." Id. at 6-7. However, "[i]f the record establishes that the illegal sentence was a material part of a package deal, then the petitioner is entitled to withdraw his plea if he cannot reach an agreement with the State." Id. (citing McConnell, 12 S.W.3d at 800); see Cantrell v. Easterling, 346 S.W.3d 445, 456 (Tenn. 2011) (citing Smith, 202 S.W.3d at 129; State v. Burkhart, 566 S.W.2d 871, 873 (Tenn. 1978)). This court has emphasized that non-material elements of a plea agreement may not merit the withdrawal of a petitioner's plea:

> [T]he presence of a relatively de minimis, or non-material, void component in the plea agreement may not justify availing the petitioner an opportunity to withdraw his plea agreement. To be sure, Smith denied the petitioner the opportunity to withdraw his guilty plea when a void component of the judgment was deemed not to be a component of the plea agreement. See generally Smith, 202 S.W.3d at 130. This court has perhaps enlarged the exceptions to the "general rule" of remedy in McLaney–Smith–Summers by holding that "the presence of a void component of a plea agreement does not necessarily equate to the invalidity of the entire agreement." Michael David Russell v. Virginia Lewis, No. E2005–02644–CCA–R3–HC, slip op. at 3, 2007 WL 2141546 (Tenn. Crim. App., Knoxville, July 26, 2007), no pet. for perm. app. filed (emphasis added). In Michael David Russell, the guilty-plea documents showed that, "in exchange for his package of guilty pleas [to armed robbery, three counts of aggravated rape, and two counts of escape], the defendant received a nolle prosequi on the charges of burglary, grand larceny, assault and battery, and habitual criminality." Id. Also, "[d]espite the presence of prior convictions that warranted a more egregious sentencing range, the agreement provided for release eligibility of 30 percent." Id. "Thus," this court said, "the mainspring of the agreement from the defendant's point of view appears to be the avoidance of additional convictions, including that of habitual criminality, and the benefit of a 30 percent release eligibility." Id. We viewed "as untenable the claim that a void component—the escape conviction . . . with its one-year sentence – fouled the remainder of the agreement." Id. Essentially, in Michael David Russell, the escape sentencing provisions were not a material part of the plea agreement.

Id. at 7-8.

Here, the State first argues that the thirty percent release eligibility was not a material bargained-for element of the plea agreement because the Petitioner knew that he would be facing a much greater sentence than forty years if he were convicted at trial. In support of this argument, the State asserts that the Petitioner was charged with five Class A felonies and two Class B felonies and was facing a potential sentence of 149 years, even as a Range I, standard offender. The State also maintains that there was overwhelming evidence of the Petitioner's guilt, which included the Petitioner's recorded confession and the victim's testimony regarding the offenses. Finally, the State asserts that three of the seven charges were dismissed and the Petitioner received two sets of concurrent sentences pursuant to the terms of the plea agreement.

In response, the Petitioner argues that the State is trying to "muddy the waters" by suggesting that the release eligibility part of his agreement was not material simply because he was facing a potentially greater sentence if convicted. In addition, regarding the State's assertion that he was facing a potential sentence of 149 years, the Petitioner argues that, as a Range I offender, it was unlikely that he would have been sentenced to all consecutive sentences and, if he had been sentenced so harshly, it was unlikely that this sentence would have survived an appeal. Instead, he asserts that because his likely sentence was between forty and sixty years if he had been found guilty at trial, it is more likely that he would have declined the plea agreement if he had not been given the thirty percent release eligibility for the aggravated rape convictions.

Alternatively, the State argues that the Petitioner failed to prove that the illegal sentences containing the thirty percent release eligibility "fouled" the plea agreement, given the other favorable terms of the plea agreement. See Summers II, 267 S.W.3d at 8. In response, the Petitioner contends that the thirty percent release eligibility in his plea agreement, which effectively amounted to a difference of fourteen years,[2] cannot be construed as a "de minimis, or non-material, void component in the plea agreement" that would not justify the withdrawal of his plea. Id. at 7. Moreover, the Petitioner argues that, in contrast to the narrow exception established in Smith v. Lewis, the thirty percent release eligibility of his aggravated rape sentences was a material bargained-for element of his plea agreement, which was thoroughly discussed during the sentencing hearing and was reflected on the judgments. See Smith, 202 S.W.3d at 129-30 (holding that the illegal sentence was

---

[2] The Petitioner accounts for this fourteen-year disparity as follows:

By entering into a 40[-]year agreement as a Range I offender at 30%, Mr. Turner knew that he was eligible for parole after 12 years. Had he been offered the legal sentence, 100% of the 20 years on the [aggravated] rape charges, he would have had to have served twenty-six (26) years before he would have been eligible for parole (20 [years] on the [aggravated] rape charges and 6 years (30% of the second 20 years)).

not a material bargained-for element of the plea agreement where the record of the previous proceedings showed that the illegality resulted from the trial court's sua sponte error regarding the unavailability of early release for child rapists).

Initially, we note that although the habeas corpus court appointed the Petitioner counsel and conducted an evidentiary hearing to determine whether the Petitioner was entitled to withdraw his guilty plea, it did not follow this court's remand directive because it improperly relied on the Petitioner's testimony instead of limiting the proof to the face of the record of the underlying proceedings. We further note that we are bound to apply the procedural guidelines for habeas corpus relief established in Summers II, 267 S.W.3d at 6-7, because this case is binding precedent. Despite this fact, we acknowledge that there has been some disagreement as to whether the habeas corpus court or the convicting court is the proper forum for determining whether a guilty plea may be withdrawn. See Joey D. Herrell v. Howard Carlton, Warden, No. E2009-01162-CCA-R3-HC, 2010 WL 2612737, at *5 (Tenn. Crim. App., at Knoxville, June 30, 2010) (Tipton, P.J., concurring) ("I see nothing in the supreme court cases that even hints at allowing the habeas court to bind a convicting court by determining whether a Petitioner is entitled to withdraw a guilty plea."); Tracy Lynn Harris v. Jim Worthington, Warden, No. E2008-02363-CCA-R3-HC, 2010 WL 2595203, at *4 (Tenn. Crim. App., at Knoxville, June 29, 2010) (Tipton, P.J., concurring) ("[A]lthough the record may support a conclusion that the illegality at issue was not a material element of the plea agreement, it is the sole authority of the convicting court, not the habeas court, to determine the proper result."), perm. app. denied (Tenn. Nov. 17, 2010); compare State v. Burkhart, 566 S.W.2d 871, 873 (Tenn. 1978) (remanding to the convicting court to conduct an evidentiary hearing to determine whether the petitioner's sentence for escape was illegal, thereby entitling him to withdraw the plea, because the sentence was ordered to be served concurrently rather than consecutively to his sentence for burglary in his plea agreement), and McLaney v. Bell, 59 S.W.3d 90, 95-96 (Tenn. 2001) (remanding the case to the habeas corpus court for the appointment of counsel and for a hearing to determine whether the petitioner's sentence pursuant to his plea agreement was void, and, if the habeas corpus court determined that the sentence was void, ordering that the habeas corpus court transfer the case to the convicting court "for appropriate disposition"), with Summers II, 267 S.W.3d at 7 (remanding the case to the habeas corpus court for the appointment of counsel and for an evidentiary hearing to determine whether the petitioner was entitled to withdraw his guilty plea). Unless the Tennessee Supreme Court decides to overrule existing precedent, a remand to the habeas corpus court for the purpose of conducting an evidentiary hearing to determine a petitioner's entitlement to withdraw his guilty plea is proper.

Upon review, we conclude that the original record, and not the Petitioner's testimony on remand, supports the habeas corpus court's determination that the thirty percent release eligibility for the aggravated rape sentences was a material bargained-for element of the

Petitioner's plea agreement.  The judgment forms for the aggravated rape convictions show that the Petitioner was sentenced as a Range I, standard offender to concurrent twenty-year sentences with a release eligibility of thirty percent.  Although the Petition to Enter Plea of Guilty does not mention the thirty percent release eligibility for the aggravated rape sentences, it does state that the Petitioner was requesting the court's permission to plead guilty to especially aggravated kidnapping, aggravated robbery, and two counts of aggravated rape in exchange for being sentenced as a Range I offender.  The transcript from the plea submission hearing also makes it clear that the Petitioner was given an effective sentence of "forty years as a [R]ange one offender with thirty percent for all purposes."  Moreover, we conclude that the Petitioner's case does not fit within the narrow exceptions established by Smith or Michael Davis Russell precluding the withdrawal of his plea.  The original record sufficiently establishes that the illegality regarding the thirty percent release eligibility was, in fact, a material bargained-for element of the plea agreement and that the Petitioner should be allowed to withdraw his plea and proceed to trial if he cannot reach a new plea agreement with the State.  Accordingly, the judgment of the habeas corpus court is affirmed.

## CONCLUSION

Upon review, we affirm the habeas corpus court's judgment allowing the Petitioner to withdraw his guilty plea if he cannot reach an agreement with the State and remanding the case to the Davidson County Criminal Court for further proceedings.

_____
CAMILLE R. McMULLEN, JUDGE